IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID NELSON,
      Plaintiff,

v.                                      Case No. 3:08cv508/MCR/EMT

UNITED STATES OF AMERICA,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

In this tax refund action David Nelson ("Nelson") sues the United States of America ("the government") claiming he is entitled to the return of overpaid federal taxes for the years 2002, 2003, 2004, 2006, and 2007. Nelson proceeds pro se and has paid the filing fee. Due to Nelson's pro se status this matter was referred to the undersigned for all preliminary orders and the filing of a Report and Recommendation. *See* N.D. Fla. Loc. R. 72.2(E); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). Pending are the government's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and for summary judgment pursuant to Fed. R. Civ. P. 56 (Doc. 17[1]), Nelson's motion for summary judgment (Doc. 26), and the respective responses thereto (Docs. 20, 29, 30). For the reasons stated below, the court recommends granting the government's motion and denying Nelson's.

I.      FACTUAL HISTORY

---

[1] The government's motion is also for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Because the court determined it would refer to materials outside the complaint in considering the government's Rule 12(b)(6) motion, it advised the parties that the motion would be treated as one for summary judgment (Doc. 32).

Other than as noted the following facts, which are derived from the parties' brief statements of facts filed with their motions for summary judgment and Nelson's amended complaint, are undisputed (*see* Doc. 15[2]; Doc. 27 at 1–3; Doc. 30 at 1–5). Nelson worked as a pilot for Northwest Airlines ("Northwest") from 2002 through 2007. For each of these years Northwest filed Forms W-2 with the IRS reporting as wages the remuneration it paid to Nelson. Nelson initially acknowledged the payments as taxable income on the Forms 1040 he filed for tax years 2002–2005. Subsequently, however, Nelson sought refunds for those tax years by filing Forms 1040X that did not report any of the Northwest compensation as taxable income; his Forms 1040 for tax years 2006 and 2007 similarly did not report the compensation as taxable income.[3] Nelson attached to the Forms 1040 or 1040X a Form 4852 (a substitute for Form W-2)—which he filled out himself—showing his compensation for each of the years at issue to be zero. Based on Nelson's return for tax year 2005, the IRS issued a full refund for overpayment of tax. The government acknowledges the refund but contends it was issued in error; the IRS has since reversed its decision granting the claim for refund and determined that Nelson owes $10,490.39 for tax year 2005. Nelson submits that for tax years 2002, 2003, 2004, 2006, and 2007, his Forms 1040 or 1040X reflect refunds due him, respectively for each of these years, $30,305.29; $30,989.33; $42,157.00; $21,774.00; and $51,754.00.

The parties agree that more than six months have passed since Nelson filed the Forms 1040 and 1040X on which his demands for refund rely and that the IRS has denied the claims. The parties dispute the date on which Nelson filed his amended tax return for tax year 2002.[4] According to Nelson, the Form 1040X was filed when he placed it in the U.S.P.S. mail on April 15, 2006; the government states that the form was not actually received by the IRS, and thus not deemed filed,

---

[2] Attached to the amended complaint are copies of Forms 1040 and Forms 1040X, or amended, tax returns Nelson filed with the Internal Revenue Service ("IRS") for tax years 2002 through 2007 (Doc. 15 at 14–34). Some of the forms apparently were originally signed by both Nelson and his wife, although her signature has been redacted from the documents presented by Nelson. Because Nelson is the sole plaintiff in this action, for simplicity's sake the court refers to Nelson only in discussing these documents or actions taken in connection with these documents.

[3] Forms 1040 and 1040X, when properly filed, may constitute valid claims for refund in accordance with Treasury Regulations. *See* 26 C.F.R. § 301.6402-3(a)(5).

[4] The parties disagree about the actual filing dates of Nelson's other returns as well but the dispute is not material to resolution of the issues before the court.

until April 20, 2006. Additionally, the parties disagree about the materiality of other facts that are not in dispute. The government concedes that Northwest is a private sector company which is not owned or operated on behalf of the United States but the government submits this fact is not material to resolution of the issues before the court. The government also acknowledges that Nelson filed Forms 4852 with his tax returns that dispute the Forms W-2 filed by Northwest but argues that this fact likewise is immaterial to resolving any issues presented in this case.

II.     PROCEDURAL HISTORY

Nelson filed his amended complaint on March 4, 2009 (Doc. 15) alleging that the remuneration he received from Northwest was not "wages"; he was not an "employee" or under the "employment" of Northwest; the airline was not his "employer"; he did not perform any "service" for Northwest; he did not receive any "compensation"; and he did not participate in a "trade or business"—as each of the terms in quotation marks is defined in the tax code or the Classification Act of 1923 (*id.* at 7). According to Nelson, instead he received "non-federally-connected private sector remuneration from Northwest Airlines, NOT 'wages'" (*id.*). Nelson submits that his interpretation of Title 26 comports with Article I, Section 9 of the U.S. Constitution, which prohibits direct federal taxation without apportionment according to representation (*id.*). Furthermore, Nelson asserts, the Sixteenth Amendment does not modify or repeal Article I but rather protects Article I from improper judicial interpretation (*id.* at 8). Nelson claims that, based this construction of the tax code and the Constitution, his tax liability for each of the years in dispute is zero and thus the withheld taxes constitute overpayments as to which he is entitled refunds.[5] Nelson seeks a total of $176,979.62 in refunds; he also demands statutory interest, costs, referral to the appropriate

---

[5] Nelson articulates his claims as follows: (1) the government "willfully abuses 26 U.S.C. § 6702 provisions in order to treat valid claims for refund as a nullity"; (2) the government "purposely relies on 26 U.S.C. § 7434 to shift lawsuit risk to unsuspecting private sector remuneration providers. . . . perpetuating a constructive fraud through intentional misrepresentations of the purposely-convoluted statutory constructions"; (3) the government "violated 26 U.S.C. § 7214(a) and 18 U.S.C. §§ 1341, 1343, and 1349 by intentional misrepresentation for monetary gain"; and (4) "[t]he IRS willfully misapplies Title 26 provisions as direct taxes on the earnings of the individual under color of the 16th Amendment in violation of Article I, Section 9, clause 4; 26 U.S.C. § 7214(a); and 18 U.S.C. §§ 241 and 242" (*See* Doc. 15 at 9).

authorities for the "willful abuse of 26 U.S.C. § 6702," expungement of all "false documents," and "[a]ll other relief the court deems appropriate"[6] (*id.* at 9–10).

In its instant motion (Doc. 17), the government first argues that the court lacks subject matter jurisdiction to adjudicate Nelson's claim for tax year 2002 because the amended return in which Nelson claims entitlement to a refund was untimely filed. Furthermore, according to the government, jurisdiction is lacking to hear Nelson's claim for tax year 2006 because the jurisdictional prepayment requirement of 26 U.S.C. § 1346(a) has not been fully satisfied.[7] Regardless of those jurisdictional defects, the government argues, it is entitled to judgment as a matter of law on all of Nelson's claims for refund, given his misplaced reliance on the following propositions which courts have repeatedly repudiated as frivolous "tax protestor" arguments: (1) that the Sixteenth Amendment does not authorize a nonapportioned direct income tax on United States citizens; and (2) that no income tax is owed on compensation received for work performed for private sector companies such as Northwest because such compensation is not taxable wages. The government submits that, based on the calculation of what is properly considered taxable income derived from Nelson's employment by Northwest as a pilot, Nelson in fact made no overpayment of tax and is due no refund for any of the years at issue.

In his motion (Doc. 26), Nelson discusses, at length and *inter alia*, various provisions of the tax code and principles of statutory construction. He concludes by essentially reiterating the statutory arguments made in his amended complaint: he did not receive wages from Northwest for his work as a pilot from 2002 through 2007; he was not a Northwest employee or under its employment; the airline was not his employer; he did not perform any service for Northwest; he did

---

[6] The court notes that to the extent Nelson seeks injunctive or declaratory relief, neither is available to him in this action. With some exceptions not relevant here, both the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Internal Revenue Code's anti-injunction statute, 26 U.S.C. § 7421(a), bar such relief in actions involving federal taxes.

[7] Included with the government's motion is the declaration of attorney Paul A. Allulis ("Allulis"), counsel for the government in this case, who states that he is a trial attorney in the Department of Justice, Tax Division, Civil Trial Section (Doc. 17-2). Attached to Allulis' declaration are literal transcripts of account for Nelson and his wife for the tax years 2002–2007 which Allulis states he requested and received from the IRS (*id.*). The transcripts of account reference Forms 1040 and note the taxpayers' account balance, etc., for the respective tax year; number of exemptions claimed; adjusted gross income; taxable income; tax per return; and return due date and processing dates. The transcripts also contain a list of transactions, including the type, date, and money amounts of activities on the account.

not receive any compensation; and he did not participate in a trade or business (*id* at 20).  Rather, Nelson asserts, he received non-federally-connected private sector remuneration from Northwest which is not subject to federal income tax (*id.*).

III.   DISCUSSION

A.  Subject Matter Jurisdiction

Federal courts exercise jurisdiction over suits for the refund of federal taxes pursuant to 28 U.S.C. § 1346(a)(1), which, along with 26 U.S.C. § 7422(a), constitutes a waiver by the United States of its sovereign immunity.  The burden of demonstrating that sovereign immunity has been waived falls on the party bringing suit against the sovereign.  *See* Lundeen v. Mineta, 291 F.3d 300, 304 (5th Cir. 2002) (burden on plaintiff to show waiver of sovereign immunity); Cominotto v. United States, 802 F.2d 1127, 1129 (9th Cir. 1986) ("[w]aiver of immunity must be demonstrated by the party suing the United States").  The government's waiver of immunity is conditioned upon the taxpayer's compliance with certain jurisdictional prerequisites.  *See* Rock Island v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 65 L. Ed. 188 (1920);  Huff v. United States, 10 F.3d 1440 (9th Cir. 1993);  Goulding v. United States, 929 F.2d 329 (7th Cir. 1991);  Gustin v. IRS, 876 F.2d 485 (5th Cir. 1989).  Before a district court has subject matter jurisdiction pursuant to § 1346(a)(1) over a tax refund claim (1) the taxpayer must have timely filed a valid refund claim with the IRS, which the IRS denied, or six months have passed since the claim was filed with no IRS response; and (2) the taxpayer must have fully paid the challenged tax assessment.  *See* 26 U.S.C. §§ 6532(a)(1), 7422(a); and Flora v. United States, 357 U.S. 63, 75-76, 78 S. Ct. 1079, 2 L. Ed. 2d 1165 (1958) ("Flora I"), *aff'd on rehearing*, 362 U.S. 145, 80 S. Ct. 630, 4 L. Ed. 2d 623 (1960) ("Flora II").

Challenges to subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure come in two forms: facial and factual.  *See* Carmichael v. Kellogg, Brown & Root Services, 572 F.3d 1271, 1279 (11th Cir. 2009); Lawrence v. Dunbar, 919 F.2d 1525, 1528–29 (11th Cir. 1990).  Facial challenges are limited to the four corners of the complaint while factual challenges permit investigation of matters outside of the pleadings themselves.  *See* Garcia v. Copenhaver, Bell, and Associates, 104 F.3d 1256, 1260–61 (11th Cir. 1997).  The court's consideration of facial attacks requires it to determine only whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction.  Lawrence, 919 F.2d at 1529 (citation and quotations

omitted). The court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled facts as true. McElmurray v. Consol. Gov't of Augusta-Richmond County, 501 F.3d 1244, 1251 (11th Cir. 2007). Factual attacks require the court to take a different approach, as they "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Id. (citation and internal quotation marks omitted). In other words, when a Rule 12(b)(1) motion constitutes a factual attack on subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." Morrison v. Amway Corp., 323 F.3d 920, 925 (11th Cir. 2003) (citing Lawrence, 919 F.2d at 1529). The court should only rely on Rule 12(b)(1), however, "[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." Id. (citation and internal quotation marks omitted). If the underlying merits are implicated, the court should instead "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. . . ." Id.

In this case, the court treats the government's challenges to subject matter jurisdiction with respect to Nelson's refund claims for tax years 2002 and 2006 as factual attacks,[8] as both concern "the existence of subject matter jurisdiction in fact, irrespective of the pleadings," the court has considered matters outside the pleadings in the form of the transcripts of account supplied by the government, and the pertinent jurisdictional facts do not implicate the underlying merits of Nelson's claims.[9] See Morrison, 323 F.3d at 925.

---

[8] The government concedes that subject matter jurisdiction is proper with respect to Nelson's claims for tax years 2003, 2004, and 2007. The court agrees.

[9] With respect to the application of Rule 12(b)(1) in this case, the court notes the following. Nelson's claims for refunds are based in part on the argument that he did not receive wages from Northwest but rather received "non-federally-connected private sector remuneration" which is not subject to federal taxation. The court concludes that the merits of Nelson's legal argument and the facts in support thereof have no bearing on either the limitations issues presented in the government's first jurisdictional challenge or the prepayment issues presented in its second challenge. To the extent this matter may be viewed otherwise, however—which would result in requiring the court to assume that jurisdiction exists and proceed to treat the government's objections as direct attacks on the substance of Nelson's causes of action—the discussion below addressing the merits of the refund claims for tax years 2003, 2004, and 2007 is equally applicable to the claims for tax years 2002 and 2006.

<u>Tax Year 2002</u>

No judicial suit for refund may be maintained "until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."  26 U.S.C. § 7422(a).  For a claim for refund to be "duly filed," a taxpayer must file the claim within the time limitations of 26 U.S.C. § 6511(a).  *See* <u>United States v. Dalm</u>, 494 U.S. 596, 602, 110 S. Ct. 1361, 108 L. Ed. 2d 548 (1990) (stating that "unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a) a suit for refund . . . may not be maintained in any court").  Section 6511(a) provides that a taxpayer must file an administrative claim with the IRS "within 3 years from the time the return was filed or 2 years from the time the tax was paid," whichever is later.  26 U.S.C. § 6511(a).  With respect to determining the date of filing, the general rule—which is known as the physical delivery rule—is that to be properly filed a claim for refund must be physically delivered to and received by the IRS.  *See* <u>Doyle v. United States</u>, 88 Fed. Cl.  314, 320 (Fed. Cl. 2009).  Title 26 U.S.C. § 7502 states two exceptions to the physical delivery rule.  The first exception provides that a certified or registered mail receipt is prima facie evidence of delivery; the date of certification or registration is deemed to be the postmark date.  *See* 26 U.S.C. § 7502(c).  Under the second statutory exception, known as the mailbox rule, when a document is received by the IRS after the filing deadline, the postmark stamped on the document is deemed to be the delivery date.[10]  *See* 26 U.S.C. § 7502(a)(1).

In this case, Nelson filed his Form 1040 return for tax year 2002 on March 31, 2003 (Doc. 17-2 at 2), which was prior to the filing deadline.  For purposes of 26 U.S.C. § 6511, an early-filed

---

[10]  As noted in <u>Doyle</u>, the Eighth and Ninth Circuit Courts of Appeals espouse the view that even if neither of the two statutory exceptions apply, the taxpayer may still be able to establish timely delivery through circumstantial evidence, thereby raising a rebuttable presumption of timely receipt by the IRS.  <u>Doyle</u>, 88 Fed. Cl. at 320 n.9 (citing <u>Anderson v. United States</u>, 966 F.2d 487 (9th Cir. 1992), and <u>Estate of Wood v. Commissioner</u>, 909 F.2d 1155 (8th Cir. 1990)).  Courts which have adopted this position nevertheless have held the taxpayer "to a strict standard of proof before invoking a presumption of receipt." <u>Sorrentino v. IRS</u>, 383 F.3d 1187, 1191 (10th Cir. 2004).
Courts other than the Eighth and Ninth Circuits, including the Court of Federal Claims, have taken the position that the only exceptions to the physical delivery rule are the two set forth in 26 U.S.C. § 7502.  *See, e.g.*, <u>McIlvaine v. United States</u>, 23 Cl. Ct. 439, 442 (1991); <u>Carroll v. Commissioner</u>, 71 F.3d 1228, 1232–33 (6th Cir. 1995); <u>Washton v. United States</u>, 13 F.3d 49, 50 (2d Cir. 1993) (per curiam).  The Eleventh Circuit does not appear to have specifically addressed the issue.

return is deemed to have been filed on the last date prescribed for such filing, in this instance April 15, 2003. *See* 26 U.S.C. § 6513(a). Nelson is unable to show that he meets the two-year filing requirement, as the undisputed evidence reflects that his 2002 taxes were deemed fully paid by April 15, 2003, and that his 2002 claim for refund was not—by both the government's account and Nelson's— filed until April 2006, or approximately one year after the deadline. With respect to the three-year filing requirement, Nelson was required to file any claim for refund no later than April 15, 2006, or three years from the deemed filing date of April 15, 2003. According to Nelson's affidavit, he placed the 2002 Form 1040X in the mail on April 15, 2006 (Doc. 20 at 18–19), and, according to the government's transcript of account for tax year 2002, the IRS received the 2002 Form 1040X on April 20, 2006 (Doc. 17-2 at 2; Doc. 29 at 5). The question therefore is whether the date that determines the document's timeliness is the date of receipt, based on application of the physical delivery rule, or whether an exception to the physical delivery rule applies. As to the first statutory exception, Nelson does not allege and points to no evidence, that he used certified or registered mail to send his 2002 Form 1040X to the IRS. He thus has not established a postmark date under this exception that would render the filing timely. Nor has Nelson shown that the second statutory exception applies. Other than his own affidavit describing an April 15, 2006, post office visit to mail his 2002 Form 1040X, Nelson has supplied nothing to demonstrate that his 2002 refund claim was in fact timely postmarked, such as a receipt for postage dated April 15, 2006, showing the IRS as addressee. Nelson's own statements are not sufficient to show that the claim for refund was timely filed. *See* Weisman v. IRS, 972 F.Supp. 185, 188 (S.D.N.Y. 1997) (holding that where IRS discarded the original postmarked envelope and taxpayer's only evidence of date of mailing was testimony of taxpayer's accountant, filing of refund claim occurred upon physical receipt of claim by IRS); Spencer v. Med. Assocs. v. Commissioner, 155 F.3d 268, 271–72 (4th Cir. 1998) (explaining that postmarked envelope or registered or certified mail receipt are the only forms of proof of mailing accepted by the Second and Sixth Circuits for purposes of § 7502, and even the

more lenient Eighth and Ninth Circuits require direct proof of the date of mailing in order to obtain the benefit of the filed-when-mailed rule) (citations omitted)).[11]

For the foregoing reasons, the court concludes that Nelson's 2002 refund claim must be deemed filed when actually received by the IRS on April 20, 2006, making it untimely under 26 U.S.C. § 6511(a).[12]   As to this claim, therefore, the government's motion to dismiss for lack of subject matter jurisdiction should be granted.

Tax Year 2006

 "The action to recover on a claim for refund is in the nature of an action for money had and received, and it is incumbent upon the claimant to show that the United States has money which belongs to him."  Lewis v. Reynolds, 284 U.S. 281, 283, 52 S. Ct. 145, 76 L. Ed. 293 (1932).  Thus, as noted above, a prerequisite to filing suit under 26 U.S.C. § 1346(a)(1) is that the taxpayer paid the full amount of the contested tax assessment.  See Flora II, 362 U.S. at 177 (holding that district court lacked jurisdiction over a suit by a taxpayer for the refund of income tax payments because the taxpayer had not fully paid the entire amount of his assessment); King v. United States, 789 F.2d 883, 884 (11th Cir. 1986).

In this case, Nelson seeks a refund in the amount of $21,774.00 for tax year 2006, based on the 2006 Form 1040 he prepared and filed that shows no taxable income (Doc. 15 at 9–10,  23).[13] He contends that he has complied with the prepayment requirement because "through federal

---

[11]    The court notes that even in jurisdictions in which a taxpayer is permitted to establish timely delivery through circumstantial evidence, the taxpayer's own uncorroborated testimony is insufficient to establish timely mailing. See Davis v. United States, 2000 WL 194111 (Fed. Cir. 2000).  Thus, in addition to finding that Nelson has failed to show that he has satisfied either of the statutory exceptions, the court concludes he is unable to establish timely delivery through extrinsic evidence, i.e., the uncorroborated statements made in his affidavit.

[12]   Furthermore, in light of the April 20, 2006, filing date Title 26 U.S.C. § 6511(b)(2)(A) bars Nelson's 2002 refund claim.  Section 6511(b)(2)(A) limits the amount of a credit or refund to "the portion of the tax paid within the period immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." 26 U.S.C. § 6511(b)(2)(A).  Amounts paid from withholding are deemed to be paid on the last date for filing of the return, which in this case is April 15, 2003.  See 26 U.S.C. § 6513(b).  Thus Nelson paid his 2002 taxes on April 15, 2003, more than three years preceding the filing date of his claim for refund on April 20, 2006.

[13]   Nelson's Form 4852, filed with his Form 1040 for tax year 2006, shows that $13,866.00 was withheld in federal income taxes, $5840.00 was withheld for Social Security taxes, and $2008.00 was withheld for Medicare taxes, for a subtotal of $21,714.00 (Doc. 15 at 27).  Adding a tax credit of $60.00 which Nelson reported on Form 1040 that he is due, the court notes that the total amount of the refund Nelson seeks for tax year 2006 is $21,774.00 (id. at 24).

withholding . . . [he] overpaid the IRS $21,774.00, or approximately $7,774.00 more than the $14,000 that [the government] asserts must be prepaid" (Doc. 26 at 5–6). The government, however, in fact submits that Nelson's federal income tax liability for 2006 is $27,239.92 and that he has prepaid only $13,866.00 through withholdings made by Northwest, with additional amounts withheld for Social Security taxes [$5840.00] and Medicare taxes [$2008.00] (Doc. 29 at 4; Doc. 17-2 at 6). According to the government, the amount due on Nelson's account for tax year 2006 is $17,040.51, taking into account the assessed tax of $27,239.92; federal income taxes withheld [-$13,866.00]; a credit due to Nelson [-$51.23]; interest due to Nelson [-$8.77]; interest assessed against Nelson [$229.54, $983.86, and $361.11]; additional taxes assessed [$2152.08]; and a penalty assessed and then abated [$599.13; -$599.13] (*see* Doc. 17-2 at 6).

As set out above, Nelson's transcript of account for tax year 2006 reflects that he has not fully paid the contested tax assessment of $27,239.92 but rather has only partially paid this amount. He is required, however, to prepay the challenged assessment *in full* prior to bringing a refund action in order to satisfy the jurisdictional prerequisite to suit under 26 U.S.C. § 1346(a)(1). *See* Flora II, 362 U.S. at 177. Accordingly, because the court lacks jurisdiction to hear Nelson's refund claim for tax year 2006, the government's motion to dismiss the claim should be granted.

B. Constitutional and Statutory Arguments

The government additionally moves for summary judgment in its favor on all of Nelson's claims; Nelson also moves for summary judgment.

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "The mere existence of *some* alleged factual dispute between the parties," however, "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (emphasis in original). A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A fact is "material" if it may affect the outcome of the case under the applicable substantive law. *See id.*

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the moving party's pleadings. Instead, the nonmoving party must respond by affidavits or otherwise and present specific allegations showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). In assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. *See* Hairston, 9 F.3d at 918. A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment. *See* Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the nonmoving party.

As an initial matter, the court addresses Nelson's contention that the government cannot rely on the literal transcripts of account supplied with Allulis' declaration to meet its summary judgment burden because they are "based on the disputed Form W-2 information that the IRS received from Northwest Airlines" (Doc. 26 at 2).[14] To the extent Nelson attempts to create a genuine issue of material fact regarding the information in the transcripts simply because he claims that the information is disputed, the effort fails. In effect, this argument merely reiterates Nelson's legal arguments in his amended complaint and memoranda that the IRS has incorrectly computed his tax liability by treating the remuneration he received from Northwest as wages, when he contends the payments should not be deemed wages. Federal Rule of Civil Procedure 56(e)(2) provides that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Nelson cannot create a genuine issue of material fact by relying on the same conclusory assertions that are contained in his pleadings

---

[14] Nelson does not argue that the transcripts of account are inadmissible. He therefore has waived any objections as to admissibility. *See* Offshore Aviation v. Transcon Lines, Inc., 831 F.2d 1013, 1015 (11th Cir. 1987) (holding that "if evidence otherwise inadmissible provoked no timely objection, it could and, if material, should be factored into a summary judgment decision"). To the extent admissibility objections (for example, on the grounds of authentication and/or hearsay) are not deemed waived, based on the information provided in Allulis' declaration the court concludes such objections should be overruled. *See* United States v. Wilson, 2009 WL 333460, *4 (5th Cir. 2009) (accepting that declaration of IRS officer regarding origins of certificate of assessment was sufficient for authentication purposes under Fed. R. Evid. 902, which identifies method for authenticating documents proffered under hearsay exception set out in Fed. R. Evid. 803(8)).

and briefs.  *See* <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) ("The object of [summary judgment] is not to replace conclusory allegations of the complaint . . .  with conclusory allegations of an affidavit"); *see also* <u>United States v. Spitzer</u>, 245 Fed. Appx. 908, 912 (11th Cir. 2007) (in action to recover refund, finding defendant's tax return and affidavits claiming that earnings were nontaxable offered legal conclusions that were "plainly insufficient to defeat the Government's motion for summary judgment").  Taking into consideration for summary judgment purposes the transcripts of account filed by the government, the court therefore proceeds to the merits of Nelson's claims.

Nelson first argues that the Constitution does not authorize a nonapportioned direct income tax on United States citizens (*see* Doc. 20 at 10–16).  The government contends this argument is frivolous, and the court agrees.

The very case which Nelson cites in his amended complaint in support of his position that the Sixteenth Amendment does not authorize a nonapportioned direct income tax (*see* Doc. 15 at 8) in fact instructs that "the whole purpose of the [Sixteenth] Amendment was to relieve all income taxes when imposed *from apportionment* from a consideration of the source whence the income was derived." <u>Brushaber v. Union Pac. R.R.</u>, 240 U.S. 1, 17–18, 36 S. Ct. 236, 241, 60 L. Ed. 493 (1916) (emphasis added).  More recently, the lower federal courts, including the Eleventh Circuit, have flatly rejected—as frivolous—arguments such as Nelson's that challenge Congress' power under the Constitution to lay and collect income taxes.  *See* <u>Motes v. United States</u>, 785 F.2d 928 (11th Cir. 1986) (rejecting argument, among others, "that withholding of tax from wages is a direct tax on the source of income without apportionment in violation of the Sixteenth Amendment" and noting that "claims such as these are frivolous"); <u>Madison v. United States</u>, 758 F.2d 573, 574 (11th Cir. 1985) (concluding the "assertion that the Treasury Department and Internal Revenue Service have no power" to lay and collect taxes on income is frivolous).  *See also* <u>United States v. Collins</u>, 920 F.2d 619, 629 (10th Cir. 1990) (stating that "[f]or seventy-five years, the Supreme Court has recognized that the sixteenth amendment authorizes a direct nonapportioned tax upon United States citizens throughout the nation"); <u>Lonsdale v. United States</u>, 919 F.2d 1440, 1448 (10th Cir. 1990) (concluding claim that income tax is a direct tax which is invalid absent apportionment was "completely lacking in legal merit and patently frivolous"); <u>Becraft v. United States</u>, 885 F.2d 547

(9th Cir. 1989) (noting that for over seventy-five years the Supreme Court and lower federal courts have both implicitly and explicitly recognized the Sixteenth Amendment's authorization of a nonapportioned direct income tax on United States citizens residing in the United States); Lovell v. United States, 755 F.2d 517, 519 (7th Cir. 1984) (indicating contention that the Constitution prohibits imposition of a direct tax without apportionment is frivolous); and Broughton v. United States, 632 F.2d 706, 707 (8th Cir. 1980) (noting that the Sixteenth Amendment authorizes the imposition of an income tax without apportionment among the states; contention to the contrary was "totally frivolous and devoid of merit").

Additionally, variations of the sort of "tax protestor" arguments asserted by Nelson have been consistently rejected by the Supreme Court and numerous other courts of appeals as frivolous. *See, e.g.,* Cheek v. United States, 498 U.S. 192, 195, 204 (1991) (noting arguments that the Sixteenth Amendment "does not authorize the imposition of an income tax on individuals[ ] and that the Sixteenth Amendment is unenforceable" have been characterized by the courts as frivolous or have been frequently rejected); Marino v. Brown, 357 F.3d 143, 147 (1st Cir. 2004) (sanctioning appellant for pursuing tax protestor arguments on appeal); United States v. Cooper, 170 F.3d 691, 691 (7th Cir. 1999) (noting that typical tax protestor arguments are "frivolous squared"); McKee v. United States, 781 F.2d 1043, 1047 (4th Cir. 1986) (stating that it is frivolous "to take a position which indicates a desire to impede the administration of tax laws"); Sauers v. Commissioner, 771 F.2d 64, 66 n.2 (3d Cir. 1985) (cataloging frivolous tax protestor arguments); May v. Commissioner, 752 F.3d 1301, 1306 n.5 (8th Cir. 1985) (describing frustration at having to address "well-worn general challenges to the Internal Revenue Code"); and Schiff v. Commissioner, 751 F.2d 116, 117 (2d Cir. 1984) (noting that federal courts have rejected the argument that tax laws are unconstitutional "countless times").

In short, the court concludes that Nelson's argument that the Constitution does not authorize a nonapportioned direct income tax on United States citizens is entirely without merit and should be rejected as frivolous.

The court next considers Nelson's argument that the remuneration he earned from Northwest does not constitute taxable wages (*see* Doc. 26 at 16–18). Nelson asserts that 26 U.S.C. § 6051 only requires the reporting of "wages" as that term is defined in 26 U.S.C. § 3401(a); § 3401(a) defines

"wages" as "remuneration (other than fees paid to a public official) for services performed by an employee for his employer"; and § 3401(c) defines an "employee" as "an officer, employee, or elected official of the United States, a State, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any one or more of the foregoing" or "an officer of a corporation."   Nelson's position is that he is not an "employee" as defined in § 3401(c) who received taxable "wages" within the meaning of § 3401(a) because he is not an officer, employee, or elected official of the United States, a State, or the District of Columbia because the work he performed for Northwest was for a private sector corporation.

Title 26 U.S.C. § 6051 requires "every employer engaged in a trade or business who pays compensation for services performed by an employee" to provide its employees with a statement setting out, *inter alia*, "the total amount of wages as defined in section[s] 3401(a) [and] 3121(a)." 26 U.S.C. §§ 6051(a)(3)(5).  Additionally, the employer must file this statement with the Secretary of the Treasury. 26 U.S.C. § 6051(d).  Section 6051 does not impose taxes.  Rather, it is section 1 of Title 26 that "impose[s] on the taxable income of every" individual, a tax determined according to tables based upon the individual's filing status. 26 U.S.C. § 1.  Taxable income is gross income minus allowable deductions.  26 U.S.C. § 63(a).  "[G]ross income means all income from whatever source derived" and specifically includes "[c]ompensation for services."  26 U.S.C. § 61(a)(1).  *See also* Commissioner of Internal Revenue v. Schleier, 515 U.S. 323, 327, 115 S. Ct. 2159, 132 L. Ed. 2d 294 (1995) (stating that "Section 61(a) of the Internal Revenue Code provides a broad definition of 'gross income'. . . . We have repeatedly emphasized the 'sweeping scope' of this section and its statutory predecessors.").

Nelson acknowledges that he worked as a pilot for Northwest during the years at issue and was remunerated for his work.  The transcripts of account provided by the government document the fact and amount of Nelson's remuneration (Doc. 17-2).  The fact that Northwest is a "private sector company, which is not owned or operated on behalf of the United States" (Doc. 26 at 8) is immaterial to the question of whether the remuneration Northwest paid Nelson for his work was "compensation for services" within the meaning of 26 U.S.C. § 61(a)(1).  It clearly was.  Addressing essentially the same argument made by Nelson in this case, the Fifth Circuit observed that "§ 3401(c) was not intended to exclude privately employed wage earners or to limit the ordinary

meaning of the term "employee" so as to exclude persons such as [the plaintiff] from tax withholding." Swanson v. American Airlines, Inc., 2000 WL 554640 (5th Cir. 2000); *see also, e.g.*, Sullivan v. United States, 788 F.2d 813, 815 (1st Cir. 1986) ("to the extent [plaintiff] argues that he received no 'wages' . . . because he was not an employee within the meaning of 26 U.S.C. § 3401(c), that contention is meritless. . . . The statute does not purport to limit withholding to the persons listed therein."). Indeed, the position that remuneration received from a private employer is not subject to income tax has been described by the Eleventh Circuit as "patently frivolous and contrary to long-established authority . . . ." Spitzer, 2007 WL 2376783, at *3. Other circuits have likewise rejected this theory as frivolous. *See, e.g.*, Montero v. Commissioner, 2009 WL 3929916 (5th Cir. 2009) (citing Parker v. Commissioner, 724 F.2d 469, 471–72 (5th Cir. 1984)); United States v. Latham, 754 F.2d 747, 750 (7th Cir.1985) (finding, in criminal prosecution, taxpayer's argument that the IRC category of "employee" would "not include privately employed wage earners" a "preposterous reading of the statute"). Moreover, the Sixth Circuit has also described this theory—which appears to be based on the theories of Peter Hendrickson, tax protester and author of *Cracking the Code: The Fascinating Truth About Taxation in America*—as a frivolous tax-protestor argument. *See* United States v. Hendrickson, 100 A.F.T.R.2d (RIA) 5395 (E.D. Mich.2007), *aff'd by unpublished slip op.*, No. 07-1510 (6th Cir. June 11, 2008).

As Nelson has not shown that any genuine issues of material fact exist with respect to his claims for refunds for tax years 2002, 2004, and 2007, the government's motion for judgment as a matter of law on these claims should be granted. *See* Celotex Corp., 477 U.S. at 322. To the extent the court may have subject matter jurisdiction over Nelson's refund claims for tax years 2002 and 2006, the government's motion for summary judgment on these claims should likewise be granted. Nelson's motion for summary judgment should be denied. *See* Spitzer, 245 Fed. Appx. at 912 (affirming grant of summary judgment against tax protestor defendant in refund recovery action).

In concluding that the government's motion should be granted, the court addresses one final matter. Nelson argues that, under 26 U.S.C. § 6201(d), because he cooperated with the Commissioner by filing a tax return for the years at issue, the government bears the burden of providing evidence that proves the validity and accuracy of the information contained in the W-2 forms filed by Northwest (Doc. 26 at 10–11). The government contends that Nelson only recites

part of § 6201(d), when in fact, this section provides that the burden of proof shifts to the Commissioner only if the taxpayer not only fully cooperates but also asserts a "*reasonable* dispute with respect to any item of income reported." 26 U.S.C. § 6201(d) (emphasis added).

As the government submits, under 26 U.S.C. § 6201(d), if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return filed with the Commissioner by a third party and the taxpayer has fully cooperated with the Commissioner, the Commissioner then bears the burden of producing reasonable and probative information concerning such deficiency in addition to such information return. 26 U.S.C. § 6201(d). Nelson's frivolous arguments do not rise to the level of a creating reasonable dispute. *See, e.g.*, Rayner v. Commissioner, 7 Fed. Appx. 739, 741 n.9 (5th Cir. 2003) (citing 26 U.S.C. § 6201(d) in rejecting taxpayer's contention that lower court had erroneously placed burden of proof on him; argument that taxpayer owed no income tax on distributions from retirement funds was patently frivolous and therefore dispute was unreasonable); Davenport v. Commissioner of Internal Revenue, 2009 WL 3571353 (U.S. Tax Ct. 2009) (concluding that burden-shifting under § 6201(d) did not apply because taxpayer did not dispute that the remuneration he received was wages and therefore taxable, thereby failing to assert a reasonable dispute). Moreover, although 26 U.S.C. § 7491(a) provides that if the taxpayer introduces credible evidence "with respect to any factual issue relevant to ascertaining the liability of the taxpayer . . . the [Commissioner] shall have the burden of proof with respect to such issue," Nelson has presented no such evidence in this case. *See* 26 U.S.C. § 7491(a).

IV.     CONCLUSION

For the reasons discussed above, the court recommends that the government's motion to dismiss Nelson's refund claims for tax years 2002 and 2006 for lack of subject matter jurisdiction be granted; in the alternative, the court recommends that the government's motion for summary judgment on these claims be granted. The court further recommends that the government's motion for summary judgment on Nelson's refund claims for tax years 2003, 2004, and 2007 be granted. Nelson's motion for summary judgment should be denied.

Accordingly, it is respectfully **RECOMMENDED**:

1.       That the United States of America's motion to dismiss David Nelson's refund claims for tax years 2002 and 2006 for lack of subject matter jurisdiction (Doc. 17) be **GRANTED**; in the

alternative, that the United States of America's motion for summary judgment on these claims be **GRANTED**.

      2.      The United States of America's motion for summary judgment (Doc. 17) on David Nelson's refund claims for tax years 2003, 2004, and 2007 be **GRANTED**.

      3.      That David Nelson's motion for summary judgment (Doc. 26) be **DENIED**.

      4.      That judgment be entered in favor of the United States of America.

At Pensacola, Florida, this 7th day of December 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

      **Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**